**IN THE U.S. DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. |
| THE PERL MORTGAGE, INC. | ) | |
| JANUARY 1, 2014 DEFERRED | ) | |
| COMPENSATION PLAN, and PERL | ) | |
| MORTGAGE, INC., as Plan Administrator, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff ANDREW STEWART ("Stewart"), by his undersigned counsel and for his Complaint against Defendants THE PERL MORTGAGE, INC. JANUARY 1, 2014, DEFERRED COMPENSATION PLAN (the "Plan") and PERL MORTGAGE, INC. ("Perl"), states:

## PARTIES

1.      Stewart is and was at all relevant times hereto an individual residing in Cook County, Illinois and both a Participant and Beneficiary under the Plan.

2.      The Plan is an employee benefits plan covered by ERISA.

3.      Perl is an Illinois corporation with its principal place of business located in Cook County, Illinois. Perl is a non-bank lender specializing in residential home mortgage financial solutions and, on information and belief, the administrator of the Plan at issue here.

## JURISDICTION AND VENUE

4.      Stewart brings this Complaint pursuant to 29 U.S.C. §§ 1132(a)(1)(A) and (B) and 1140. Therefore, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (Federal Question).

5.      As an Illinois corporation with its principal place of business within this state, Perl is also subject to personal jurisdiction here.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2), as Perl resides in this State and a substantial part of the events or omissions giving rise to the claim occurred here.

## GENERAL ALLEGATIONS

7.      Prior to his termination on or about January 10, 2019, Perl employed Stewart as its Chief Operations Officer ("COO") and selected Stewart to participate in a special benefit plan implemented by Perl.

8.      The Plan provides a maximum benefit of $500,000.00, payable at the rate of $50,000 per year beginning on January 1, 2022, assuming Stewart's continued employment between January 1, 2014 and December 31, 2021. A true and correct copy of the letter Perl provided Stewart "highlighting the major benefits of the [P]lan" is attached hereto as Exhibit 1.

9.      On information and belief, Perl is the Plan's Administrator or in fact exercises ultimate responsibility for Plan interpretation and benefit decisions thereunder.    The letter highlighting the Plan's benefits references but does not identify the "Plan Administrator." (Ex. 1, p. 4).  Additionally, the letter explicitly names Perl as the entity who "will provide [Stewart] with a supplemental income benefit in the amount of $50,000 per year, for a 10 year period." (Ex. 1, p. 1)

10.      The Plan further provides, in relevant part, "if [Perl] should terminate [Stewart] for reasons other than cause… prior to December 31, 2021," Perl will pay Stewart a "lump sum benefit based on a partial vesting schedule." (*See* Ex. 1, p. 2). The Plan, however, does not define "cause." (*See* Ex. 1, pp. 1-5).

11.     Perl terminated Stewart's employment without cause on January 10, 2019.

12.     The reasons Perl contemporaneously articulated for terminating Stewart on January 10, 2019, were two-fold: (1) Stewart recommended the White Eagle Golf Club in Naperville, Illinois (the "Club"), where he is a member, as an office space for Perl's competitor, Homeside Financial, LLC ("Homeside"); and (2) Stewart began working for Homeside from the Club in early January 2019 (of course, this necessarily had to be prior to January 11, 2019).

13.     Neither of those assertions was or is true.

14.     To the extent, if any, Perl now tries to suggest that it terminated Stewart for breach of his fiduciary duties for secretly planning on joining Homeside while employed by Perl, that *post hoc* rationalization is both irrelevant and untrue.

15.     Indeed, at all relevant times Stewart openly divulged and discussed his interest in joining Homeside with Perl's President, Ken Perlmutter ("Perlmutter"), from November of 2018 on.

16.     Specifically, Stewart disclosed the following to Perlmutter on or about the dates referenced:

- he did not feel that Perlmutter was committed to him or Perl, and that Stewart would therefore be considering other employment opportunities (November 2018);

- he did not feel that CrossCountry Mortgage, Inc. ("CrossCountry"), a company with which Perl was exploring a sale or relationship, was the best option for him (December 2018);

- most Perl producers did not want to go to CrossCountry (December 2018); and

- Neither he nor other key Perl personnel like David Hendriksen and David Hochberg wanted to go to Cross Country and that Homeside was a much better fit for them (December 2018).

17.     In fact, in December of 2018, Perlmutter authorized Stewart to contact Homeside to discuss a potential partnership with Perl in CrossCountry's stead.

18.     Perlmutter also engaged in direct communications with Homeside about that very possibility (i.e. a potential partnership with Homeside in CrossCountry's stead).

19.     Moreover, and when the prospect of a Perl/Homeside transaction was dropped, Perlmutter repeatedly told Stewart and others that he would come over to Homeside with his own personal sales team ($400M) at some point after the closing of the CrossCountry deal.

20.     Notwithstanding Perl's obligations under the Plan and its lack of cause to terminate him, Perl has knowingly and willfully failed to pay Stewart a lump sum benefit upon termination, thereby wrongfully denying him of his benefits under the Plan.

21.     For a termination in year of service 2019, Perl owed Stewart a lump sum benefit of $306,244. (Ex. 1, p. 5).

22.     After Perl terminated him on January 10, 2019, Stewart repeatedly asked Perl's Human Resources officer  (as no Plan Administrator was named in the letter attached hereto as Exhibit 1) to provide him with the formal Plan documents or Summary Plan Description.  To date, however, Perl has not provided any additional Plan documentation beyond Exhibit 1.

23.     Additionally, undersigned counsel asked Perl's outside counsel in April and May of 2019 for the Plan documents, the name of the Plan Administrator and the forms, if any, required by the Plan Administrator for Stewart to make a written claim for benefits as suggested by Ex. 1, p. 4.  Perl's outside counsel, however, has ignored these requests just as Perl itself has ignored Stewart's requests.

## COUNT I
## FAILURE TO PROVIDE INFORMATION PURSUANT TO
## 29 U.S.C. § 1132(a)(1)(A)

24.     Stewart incorporates the allegations set forth in paragraphs 1 through 23 above as if fully set forth herein.

25.     The Plan is an unfunded ERISA top hat plan which exists primarily to provide benefits to a select group of management or highly compensated employees. 29 U.S.C. § 1101(a).

26.     The Plan is subject to ERISA's enforcement provisions. 29 U.S.C. §§ 1131-1145.

27.     Despite repeated requests directed to both it and its outside counsel, Perl and the Plan have failed to provide Stewart and his designated representative with relevant Plan information on request.

28.     It has done so in bad faith and with an intent to delay or impede Stewart's claim for benefits under the Plan.

WHEREFORE, Stewart prays that this Court enter an order in his favor and against Defendants pursuant to 29 U.S.C. §1132(c)(1) for:

    a.  their failure and refusal to provide him with the Plan information requested;

    b.  statutory damages of $100 per day from the initial date of the failure;

    c.  reasonable attorneys' fees, court costs, and expenses, 29 U.S.C. § 1132(g)(1); and

    d.  such other relief in his favor as the Court deems appropriate under the circumstances.

## COUNT II
## DENIAL OF BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)

29.     Stewart incorporates the allegations set forth in paragraphs 1 through 23 above as if fully set forth herein.

30.     The Plan is an unfunded ERISA top hat plan which exists primarily to provide benefits to a select group of management or highly compensated employees. 29 U.S.C. § 1101(a).

31.     The Plan is subject to ERISA's enforcement provisions. 29 U.S.C. §§ 1131-1145.

32.     Stewart is due benefits under the Plan because of his termination without cause on January 10, 2019. 29 U.S.C. § 1132(a)(1)(B).

33.     Perl has wrongfully denied Stewart the benefits of the Plan.

34.     Stewart has attempted to exhaust all of the Plan's administrative procedures and remedies by notifying Perl's authorized representatives of this claim, to no avail.

35.     There has been a lack of meaningful access to the review procedures for the Plan and exhaustion of internal remedies would be futile.

36.     The amount of benefits due Stewart under the terms of the Plan is $306,244 according to the partial vesting schedule under the Plan.

WHEREFORE, Plaintiff, Andrew Stewart, respectfully requests this Court enter an order in his favor and against Defendants for:

a.      statutory damages of $306,244;

b.      reasonable attorneys' fees, court costs, and expenses, 29 U.S.C. § 1132(g)(1); and

c.      all such other and further relief in Plaintiff's favor as this Court deems just and proper.

## COUNT III
## INTERFERENCE UNDER 29 U.S.C. § 1140

37.     Stewart incorporates the allegations set forth in paragraphs 1 through 23 above as if fully set forth herein.

38.     The Plan is an ERISA plan and Stewart is a member of it.

39.     Perl selected Stewart as COO to participate in the Plan.

6

40.     Perl terminated Stewart's employment on or about January 10, 2019, with the specific intent to violate ERISA and interfere with Stewart's rights under the Plan.

41.     Perl terminated Stewart under circumstances that indicate Perl intended to deprive Stewart of benefits. 29 U.S.C. § 1140.

42.     Absent Perl's improper termination of Stewart's employment, Stewart would be entitled to the maximum benefit of $500,000.00 under the Plan.

WHEREFORE, Plaintiff, Andrew Stewart, respectfully requests this Court enter an order in his favor and against Defendants for:

a.     statutory damages of $500,000;

b.     reasonable attorneys' fees and costs, as aforesaid; and

c.     all such other and further relief in Plaintiff's favor as this Court deems just and proper.

Respectfully submitted,

ANDREW STEWART,

By:    /s Robert H. Smeltzer
       One of his attorneys

       Robert H. Smeltzer
       Chase M. Hundman
       HOWARD & HOWARD ATTORNEYS, PLLC
       200 South Michigan Ave., Suite 1100
       Chicago, Illinois 60604
       Tel:    (312) 372-4000
       Fax:    (312) 939-5617
       rsmeltzer@howardandhoward.com
       chundman@howardandhoward.com

4850-8965-2630, v. 3

# Exhibit A



2936 West Belmont Ave. | Chicago, IL 60618 | 773.413.6234 direct | 773.617.8231 cell | 773.413.6134 fax

January 1, 2014

To: Andrew Stewart

Dear Andrew,

Congratulations once again on being selected to participate in a special benefit plan implemented by Perl Mortgage.

## THE PLAN

Perl Mortgage has implemented the Perl Mortgage, Inc. deferred Compensation Plan for a select group of key employees who we feel are instrumental in the future growth of Perl Mortgage. This letter highlights the major benefits of the plan.

## SUPPLEMENTAL INCOME BENEFIT

The plan is designed to reward you for your hard work in helping grow the company over the next eight years. The maximum benefits of the plan are contingent upon your continued employment with Perl Mortgage through this eight year period. Upon completion of employment through December 31, 2021, Perl Mortgage will provide you with a supplemental income benefit in the amount of $50,000 per year, for a 10 year period. **Your total benefit will be $500,000.** (See Exhibit A)

During the payout phase of this retirement plan, should any event occur in which your employment terminates, Perl Mortgage will pay you a lump sum benefit equal to any remaining unpaid benefits subject to a present value (PV) calculation.

In addition, if the company should terminate you for reasons other than cause, or the company is sold and you elect to stay with the new owner, prior to December 31, 2021, Perl Mortgage will pay you a lump sum benefit based on a partial vesting schedule of the PV calculation for December 31, 2021.

## Death Benefit

The plan includes a very beneficial provision that provides your designated beneficiaries with a lump sum payment for any remaining unpaid benefits under the plan should you die at any time while still employed with the company. This provision is effective immediately and is not subject to a PV calculation. **Your current death benefit equals $500,000.**

Since we are providing this benefit for a very small, select group of employees, we ask that you keep this confidential and not share this with anyone else.

We at Perl Mortgage value your employment with us and your long term commitment to the company.

Sincerely,

Ken Perlmutter

# EXHIBIT A FOR ANDREW STEWART

| Plan Year | Benefit Due Participant |
|-----------|-------------------------|
| 2014 – 2021 | $0 |
| 2022 | $50,000 |
| 2023 | $50,000 |
| 2024 | $50,000 |
| 2025 | $50,000 |
| 2026 | $50,000 |
| 2027 | $50,000 |
| 2028 | $50,000 |
| 2029 | $50,000 |
| 2030 | $50,000 |
| 2031 | $50,000 |

# ADDITIONAL INFORMATION

# PERL MORTGAGE, INC. DEFERRED COMPENSATION PLAN

***Claims Procedure.*** Any Participant or Beneficiary who is entitled to a payment of a benefit for which provision is made in this Plan shall file a written claim with the Plan Administrator on such forms as shall be furnished to him by the Plan Administrator and shall furnish such evidence of entitlement to benefits as the Plan Administrator may reasonably require. The Plan Administrator shall notify the Participant or Beneficiary in writing as to the amount of benefit to which he is entitled, the duration of such benefit, the time the benefit is to commence and other pertinent information concerning his benefit. If a claim for benefit is denied by the Plan Administrator, in whole or in part, the Plan Administrator shall provide adequate notice in writing to the Participant or Beneficiary whose claim for benefit has been denied within ninety (90) days after receipt of the claim unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice indicating the special circumstances and the date by which a final decision is expected to be rendered shall be furnished to the Participant or Beneficiary. In no event shall the period of extension exceed one hundred eighty (180) days after receipt of the claim. The notice of denial of the claim shall set forth (a) the specific reason or reasons for the denial; (b) specific reference to pertinent Plan provisions on which the denial is based; (c) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (d) a statement that any appeal of the denial must be made by giving to the Plan Administrator, within sixty (60) days after receipt of the notice of the denial, written notice of such appeal, such notice to include a full description of the pertinent issues and basis of the claim. The Participant or Beneficiary (or his duly authorized representative) may review pertinent documents and submit issues and comments in writing to the Plan Administrator. If the Participant or Beneficiary fails to appeal such action to the Plan Administrator in writing within the prescribed period of time, the Plan Administrator's adverse determination shall be final, binding and conclusive.

***Appeal.*** If the Plan Administrator receives from a Participant or a Beneficiary, within the prescribed period of time, a notice of an appeal of the denial of a claim for benefit, such notice and all relevant materials shall immediately be submitted to the Employer. The Employer may hold a hearing or otherwise ascertain such facts as it deems necessary and shall render a decision which shall be binding upon both parties. The decision of the Employer shall be made within sixty (60) days after the receipt by the Plan Administrator of the notice of appeal, unless special circumstances require an extension of time for processing, in which case a decision of the Employer shall be rendered as soon as possible but not later than one hundred and twenty (120) days after receipt of the request for review. If such an extension of time is required, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. The decision of the Employer shall be in writing, shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based and shall be promptly furnished to the claimant.

## Perl Mortgage, Inc. deferred Compensation Plan

### PARTIAL VESTING SCHEDULE

#### 10 Payments of $50,000*

| Year Service Terminates | Partially Vested Percentage of PV* | Lump Sum Benefit |
|---|---|---|
| 2014 | 30% | $114,842 |
| 2015 | 40% | $153,122 |
| 2016 | 50% | $191,403 |
| 2017 | 60% | $229,683 |
| 2018 | 70% | $267,964 |
| 2019 | 80% | $306,244 |
| 2020 | 90% | $344,525 |
| 2021 | 100% | $382,805 |

*Vesting schedule is based on the PV calculation which assumes 10 annual payments made at the beginning of each period beginning 12/31/2021 using an interest rate factor of 6.50%.